UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DAVID CILLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00262-JRS-MJD |
| | ) | |
| ROGERS, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING ALL OTHER MOTIONS, AND DISMISSING ACTION**

This action is based on David Cilla's allegations that staff members at the U.S. Penitentiary at Terre Haute beat him because of his religious beliefs and practices, refused to treat his injuries, and then confined him in restraints for several hours. The defendants seek summary judgment based on the affirmative defense that Mr. Cilla failed to exhaust administrative remedies before filing this lawsuit. For the reasons discussed below, the defendants' motion is **granted**, all other motions are **denied**, and this action is **dismissed**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in

evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and is not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana Univ.,* 870 F.3d 562, 572-73 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## II. The Prison Litigation Reform Act

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Cilla] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

### III. Facts

This action is based on an incident that allegedly occurred in July 2018 at the U.S. Penitentiary at Terre Haute (USPTH). Mr. Cilla alleges that correctional officers beat him, that he was denied adequate treatment for his injuries, and that he was confined for hours in a restraint cell without justification. Mr. Cilla further alleges that the defendants did this because he practices Islam. The facts concerning Mr. Cilla's attempts to exhaust administrative remedies are more or less undisputed.

A.     **Administrative Remedy Program**

The U.S. Bureau of Prisons (BOP) operates an administrative remedy program that allows inmates to "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). As a prisoner at USPTH, Mr. Cilla was subject to the administrative remedy program. *See* 28 C.F.R. § 542.10(b) ("This Program applies to all inmates in institutions operated by the Bureau of Prisons . . . ."). The administrative remedy program is codified in the Code of Federal Regulations and in BOP Program Statement 1330.18 (Jan. 6, 2014) (avail. at https://www.bop.gov/policy/progstat/1330_018.pdf).

The process consists of four steps. First, the inmate must present the issue informally to a staff member. 28 C.F.R. § 542.13(a). Second, if the inmate does not achieve a satisfactory informal resolution, he must submit a formal written administrative remedy request on form BP-9 within 20 days of the underlying incident. 28 C.F.R. § 542.14(a). The inmate should receive a response from the warden of his facility within 20 days. 28 C.F.R. § 542.18.

Third, if the inmate is not satisfied with the warden's response, he must submit an appeal to the regional director within 20 days on form BP-10. 28 C.F.R. § 542.15(a). The inmate should receive a response from the regional director within 30 days. 28 C.F.R. § 542.18. Fourth, if the inmate is not satisfied with the regional director's response, he must appeal to the BOP's general counsel within 30 days on form BP-11. 28 C.F.R. § 542.15(a).

If an inmate does not receive a response within any of the designated timeframes, he may proceed to the next step as though his request was denied. 28 C.F.R. § 542.18. For example, if the warden does not respond within 20 days, the inmate may then appeal to the regional director. And if the regional director does not respond within 30 days, the inmate may then appeal to the general counsel.

When an inmate submits an administrative remedy request or appeal that does not meet the relevant requirements, it may be rejected and returned without a ruling. 28 U.S.C. § 542.17(a). If the inmate's error is correctable, he may correct and resubmit it. 28 U.S.C. § 542.17(b). If not, the inmate may appeal the rejection. 28 U.S.C. § 542.17(c). Thus, if an inmate submits an administrative remedy request outside the 20-day time limit, and if it is rejected as untimely, the inmate may appeal the rejection to the regional director.

**B.     Mr. Cilla's Attempts to Exhaust**

The BOP's records show that Mr. Cilla filed 19 administrative remedy requests between July 5, 2018 (when he was allegedly attacked by officers), and June 5, 2019 (when he filed his complaint). Dkt. 122-5 at 25–34. Of those only four include an "A" in their identification numbers to indicate that Mr. Cilla appealed them to the general counsel: 942406-A1, 952243-A1, 959440-A1, and 958350-A1. *See id.*; dkt. 122-1 at ¶ 6 ("A request submitted to the Central Office is called a BP-11 and are [*sic*] identified by the notation 'A1' following the remedy identification number.").

The first, 942406-A1, is completely unrelated to this lawsuit. It alleges that staff members mishandled Mr. Cilla's mail and harassed his wife months before the attack underlying this case. *See* dkt. 122-6.

Next, both 952243-A1 and 958350-A1 describe officers extracting Mr. Cilla from his cell on July 5 and beating him. However, neither alleges that he was denied medical treatment, confined in a restraint cell, or subjected to these actions because of his religion. *See* dkts. 122-7, 122-8.

Finally, in 959440-A1, Mr. Cilla raised all the issues necessary to put the prison administration on notice of his claims in this case. In addition to describing the officers' attack, Mr. Cilla stated that he was given "an inadequate medical assessment," that officers told him he was beaten for practicing Islam, and that Counselor Ballard told him he shredded his initial

5

attempts to exhaust the administrative remedy process. *See* dkt. 25-1 at 11–12. However, Mr. Cilla did not submit his administrative remedy request in 959440-A1 until November 8, 2018—more than four months after the underlying incident. *See id.* Accordingly, his request was rejected as untimely. *See* dkt. 122-1 at ¶ 11(l); dkt. 122-5 at 34.

Mr. Cilla alleged in one more administrative remedy request, 9588857-F1, that he received inadequate medical care following the July 5 attack. Dkt. 25-1 at 4–6. It is not clear whether the prison staff denied that request on its merits or rejected it as untimely. Regardless, Mr. Cilla never appealed the denial or rejection of that request. *See* dkt. 122-5 at 30; dkt. 122-1 at ¶ 6 ("A request submitted at the institution level is called a BP-9 and identified by the notation 'F1' following the remedy identification number.").

### IV. Analysis

To satisfy the PLRA, a prisoner need only describe his concerns in enough detail to satisfy the requirements of the prison's grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). When those procedures—like the BOP's regulations—"provide little guidance regarding the required contents of a prison administrative complaint, . . . an inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought.'" *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020) (quoting *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).

The record shows that Mr. Cilla only exhausted three administrative remedy requests, and none of them put the prison staff on notice of the nature of the wrongs he seeks to address in this lawsuit. His request in 942406-A1 concerned mail and harassment of his wife, and his requests in 952243-A1 and 958350-A1 provide no indication that he was denied medical treatment, confined in a restraint cell, or mistreated because of his religion. *See* dkts. 122-7, 122-8.

In 9588857-F1 and 959440-A1, Mr. Cilla put the prison staff on notice of some or all of the issues pending in this lawsuit. But he did not pursue 958857-F1 through the end of the appeals process, and he did not bring 959440-A1 until months after the relevant deadline. Mr. Cilla did not comply strictly with the BOP's administrative remedy process, and he did not submit his requests in the time that process requires. *Reid*, 962 F.3d at 329; *Dale,* 376 F.3d at 655.

Mr. Cilla offers several reasons why the Court should either find that he exhausted the administrative remedy program or that the program was unavailable to him. But none of his arguments finds support from the record.

Mr. Cilla reiterates that he attempted to initiate the process promptly by presenting an informal request to Counselor Ballard, who later stated that he shredded the document because of Mr. Cilla's religion. Dkt. 126 at 3–4. However, the administrative remedy process did not require Mr. Cilla to include a response from Counselor Ballard with his formal administrative remedy request. *See* 28 C.F.R. § 542.14. In the BOP's system, an inmate may always move forward in the remedy process without receiving a response. *See* 28 C.F.R. § 542.18. If Counselor Ballard maliciously destroyed Mr. Cilla's informal request, that could not prevent Mr. Cilla from filing a formal administrative remedy request.

Mr. Cilla states that he was unable to pursue administrative remedies while he was being transported to a new prison for approximately three weeks in September 2018. Dkt. 126 at 5. However, the administrative remedy program required Mr. Cilla to file a formal administrative remedy request within 20 days following the incident. 28 C.F.R. § 542.14(a). The administrative remedy program required Mr. Cilla to present all his issues in a formal administrative remedy request by late July 2018. His transfer a month later did not prevent him from meeting that requirement.

Finally, Mr. Cilla believes he asserted allegations regarding the claims pending in this case in some of the administrative remedy requests logged in the BOP's system but not specifically discussed by the defendants. Dkt. 126 at 14. However, the BOP's records show—and Mr. Cilla does not dispute—that only four of those requests were ever appealed as far as the general counsel. Dkt. 122-5 at 25–34. The Court discussed those requests at length above. For purposes of the exhaustion defense, it does not matter what Mr. Cilla included in requests that he did not pursue to the end of the process.

In short, the record shows that the BOP administrative remedy process was available to Mr. Cilla and that he failed to exhaust the process before filing suit. Accordingly, the defendants are entitled to summary judgment.

## V. Remaining Motions

Several ancillary motions remain pending, but none precludes the Court from granting the defendants' summary judgment motion or entering final judgment.

Mr. Cilla's motion for extension of time, dkt. [121], concerns the defendants' *first* motion for summary judgment, which was denied, and it is therefore **denied as moot**.

Mr. Cilla's motion to appear in person and motion to be examined by an outside doctor, presume that this matter is proceeding to a trial. Because there will be no trial, these motions, dkts. [131] and [132], are **denied as moot**.

Finally, Mr. Cilla has filed two motions to appoint counsel. The Court previously determined that Mr. Cilla was capable to litigate this action pro se through the resolution of dispositive motions. *See* dkts. 32, 79. Mr. Cilla's most recent motions concern his ability to prepare the matter for trial and do not change the Court's earlier assessment. Mr. Cilla's motions to appoint counsel, dkts. [128] and [130], are **denied**.

## VI. Conclusion

The defendants' motion for summary judgment, dkt. [122], is **granted**. This action is **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*[A]ll* dismissals under § 1997e(a) should be without prejudice.") (emphasis in original).

Mr. Cilla's motion for extension of time, dkt. [121], motion to appear in person, dkt. [131], and motion to be examined by an outside doctor, dkt. [132], are **denied as moot**. His motions to appoint counsel, dkts. [128] and [130], are **denied**.

The **clerk is directed** to enter **final judgment** consistent with this entry, the entry screening the amended complaint, dkt. [27], and the entry ruling on the defendants' motion to dismiss, dkt. [87].

**IT IS SO ORDERED.**

Date: 11/17/221

*[signature]*

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DAVID CILLA
00880-104
CANAAN - USP
CANAAN U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 300
WAYMART, PA 18472

Lara K. Langeneckert
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
lara.langeneckert@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov